IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **BARBARA SMART**, Individually and as Personal Representative of the **Estate of MARCIUS D. MCFADDEN** <br> 1207 Eggleston Court <br> Upper Marlboro, MD 20772 <br><br> *Plaintiffs* <br><br> vs. <br><br> **MEDSTAR WASHINGTON HOSPITAL CENTER** <br> 110 Irving Street, N.W. <br> Washington, D.C. 20010 <br> Serve On: <br><br> C.T. Corporation <br> 1015 15th Street, N.W., Suite 1000 <br> Washington, D.C. 20005 <br><br> *Defendants*. | Case No._____ <br><br> **Jury Trial Demanded** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND JURY DEMAND

Barbara Smart, Individually, and as Personal Representative of the Estate of Marcius D. McFadden, alleges that Defendant Medstar, by and through the negligent acts and omissions of its employees and agents, caused the pain, suffering, and death of Mr. McFadden.

## PARTIES

1. The Estate of Marcius D. McFadden was opened on July 17, 2019, in Prince George's County, Maryland.

2. Barbara Smart, Mr. McFadden's natural mother, was appointed Personal Representative of his Estate.

3. Ms. Smart is a citizen and resident of Prince George's County, Maryland.

4. Defendant MedStar Washington Hospital Center ("WHC") is a hospital facility domiciled, and with its principal place of business, in the District of Columbia.

5. At all relevant times, WHC offered medical and related services to the public, and held itself, as well as its employees and agents, out to the public, including to Mr. McFadden, as medical professionals practicing medicine within ordinary standards of medical care.

6. At all times relevant, the doctors, nurses, and other medical professionals that provided care to Mr. McFadden were employed by, or were the actual and/or apparent agents of, WHC.

## JURISDICTION AND VENUE

7. Plaintiff originally filed this action in the Maryland Health Care Alternative Dispute Resolution Office pursuant to Md. Cts. & Jud. Pro. § 3-2A-01, *et seq*. and has satisfied all conditions precedent to filing this Complaint.

8. There is complete diversity among the parties, and the amount in controversy exceeds $75,000, so this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

9. A substantial portion of the events in this case, including Mr. McFadden's injury and death, occurred in Maryland so venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL COUNTS

10. The Certificate of Qualified Expert and Report of Plaintiff's expert, Dr. Alexander Duncan, is attached hereto and incorporated herein.

11. On April 25, 2019, Mr. McFadden was in a severe motorcycle collision, and was rushed to MedStar Washington Hospital Center where he was admitted.

12. Among other injuries, Mr. McFadden sustained a left hip dislocation and a left open patellar fracture, which required multiple surgeries to his left lower extremities.

13. On April 28, 2019, Mr. McFadden was seen by Dr. Monica Peravali in consultation for anticoagulation therapy.

14. Dr. Pervali was employed by, or was the actual agent of, WHC at all relevant times.

15. Dr. Peravali noted Mr. McFadden's expected immobilization, and consequent risk for developing deep vein thrombosis ("DVT"), and prescribed lovenox anticoagulation therapy for four weeks.

16. Dr. Peravali did not schedule any follow ups for herself or any other hematologist or communicate the need for further consultation at the end of four weeks.

17. On May 10, 2019, Mr. McFadden was transferred to National Rehabilitation Hospital ("NRH") where he remained until discharge on May 18, 2019.

18. When he was discharged from NRH, his treating physician noted that he had six doses of lovenox remaining from the original order. Mr. McFadden was still substantially immobile, requiring the use of a walker and/or wheelchair, and a bedside commode.

19. Mr. McFadden returned home where he continued to receive follow-up home nursing care and physical therapy until June 18, 2019. Even at the conclusion of the at-home nursing visits, Mr. McFadden remained substantially immobile.

20. On July 1, 2019 Mr. McFadden sustained an occlusive pulmonary thromboemboli resulting his is tragic death at the age of 43.

## COUNT I: NEGLIGENCE

21. Claimant reasserts and incorporates the above paragraphs.

22. At all times relevant, WHC and its employees and agents, including Dr. Peravali, owed Mr. McFadden a duty to provide care consistent with the standard expected of reasonably competent physicians and nurses with similar specialties practicing in similar circumstances.

23. WHC, by its agents and employees, including Dr. Peravali, breached that duty by, among other things:

    a. Failing to adequately assess Mr. McFadden's risk of developing deep vein thrombosis;

    b. Failing to properly consider that Mr. McFadden had the following risk factors for DVT:

        i. Lower extremity orthopedic trauma;

        ii. Lower extremity orthopedic surgery;

        iii. History of DVT;

        iv. History of smoking;

        v. African American heritage;

        vi. Obesity; and

        vii. Prolonged immobility after hospital discharge;

    c. Failing to prescribe the appropriate prophylactic and/or therapeutic

      course of anticoagulation medication;

   d. Failing to prescribe the appropriate duration of prophylactic and/or therapeutic course of anticoagulation medication;

   e. Failing to schedule and/or perform a follow-up hematological consultation prior to the cessation of anticoagulation therapy;

   f. Failing to take the appropriate measures to mitigate the risk of and/or prevent the development of thromboemboli;

   g. Failing to re-evaluate and/or reconsider the initial plan for anticoagulation therapy based on Mr. McFadden's continued immobility; and

   h. Such other acts and/or omissions as further investigation and discovery may reveal.

24. These breaches in the standards of care were the direct and proximate cause of Mr. McFadden's injuries, including:

   a. Occlusive pulmonary thromboemboli;

   b. Conscious pain and suffering; and

   c. Death.

WHEREFORE, Barbara Smart, as Personal Representative of the Estate of Marcius D. McFadden, seeks damages in excess of Seventy-Five Thousand Dollars to compensate the Estate of Marcius D. McFadden for Mr. McFadden's conscious pain and suffering prior to his death, along with any other relief deemed appropriate.

## COUNT II: WRONGFUL DEATH

25. Plaintiff incorporates the above paragraphs.

26. WHC's negligence caused the death of Mr. McFadden.

27. Barbara Smart is the natural mother of Mr. McFadden.

28. At the time of his death, Mr. McFadden was not married and had no children, and he provided substantial financial support to Ms. Smart, as well as valuable household services.

WHEREFORE, pursuant to D.C. Code §§16-2701 – 16-2703, Ms. Smart, individually, seeks in excess of Seventy-Five Thousand Dollars to compensate her for the loss of financial support and household services, along with any other relief deemed appropriate.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

PETER ANGELOS LAW

/s/ *Thomas Keilty*

Thomas W. Keilty, III (Bar No. 18992)
tkeilty@lawpga.com
Nicholas C. Bonadio (Bar No. 13679)
nbonadio@lawpga.com
1 Charles Center
100 North Charles Street
22nd Floor
Baltimore, Maryland 21201
Telephone: 410-649-2000
Fascimile: 410-649-2150

*Attorneys for Plaintiff*