# ATTACHMENT 2

| | | |
|---|---|---|
| **BARBARA SMART,** Individually and as Personal Representative of the Estate of **MARCIUS D. MCFADDEN**, Deceased 12707 Eggleston Court Upper Marlboro, MD 20772 | * * * * | **IN THE HEALTH CLAIMS ALTERNATIVE DISPUTE RESOLUTION OFFICE OF MARYLAND** |
| *Claimants* v. | * * | |
| **MEDSTAR WASHINGTON HOSPITAL CENTER** 110 Irving Street, N.W. Washington, D.C. 20010 | * * * | HCADRO No. 2021-264 |
| **SERVE:** C.T. Corporation 1015 15th Street, N.W., Suite 1000 Washington, D.C. 20005 | * * | |
| *Health Care Providers.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## CLAIMANTS' CERTIFICATE OF QUALIFIED EXPERT

I, Marc Itskowitz, M.D. certify and attest as follows:

1.  I am board certified in internal medicine, and I am licensed to practice medicine in Pennsylvania. I certify that, within five (5) years of the alleged acts or omissions giving rise to this cause of action, I have had clinical experience, provided consultation relating to clinical practice, and or/taught medicine in the field of internal medicine, in particular, I am currently the an Associate Professor of Medicine at Temple University, the Director of Didactic Education in the Department of Medicine at Allegheny General Hospital, and the Director of the Center for Perioperative Medicine for the Allegheny Health Network. I further certify that I have clinical experience, provided consultation relating to clinical practice, and/or taught medicine relating to the treatment and management of patients requiring anticoagulation to mitigate the risk of DVT after orthopedic trauma. I also have experience reviewing at home nursing reports in these circumstances.

2.  In the previous twelve months, I have not devoted more than 25 percent of my professional activities to activities that directly involve testimony in personal injury claims.

3.  I have reviewed the medical records relating to Mr. McFadden's treatment and care at MedStar Washington Hospital Center, MedStar National Rehabilitation Hospital, and records from his subsequent home nursing care treatment.

4.  Based upon my review of this matter and upon my knowledge training and experience in the field of internal medicine, and as set forth more fully in the attached Report, it is my opinion to a reasonable degree of medical probability that MedStar National Rehabilitation Hospital, Robert Bunning, M.D., and Laura Tom, M.D. breached the applicable standard of care in their treatment of Mr. McFadden in 2019, and that these breaches of the standard of care caused injuries to Mr. McFadden, including but not limited to pulmonary embolism, and ultimately his death on July 1, 2019.

I certify that I have read this Certificate of Qualified Expert, and that it is true and correct to the best of my knowledge, information, and belief.

_____
Marc Itskowitz, M.D.

**Marc S. Itskowitz, M.D., FACP**
1307 Federal Street
Suite 304
Pittsburgh, PA 15212

August 26, 2021

    *Re: Estate of Marcius McFadden*

Dear Mr. Keilty,

I am a physician licensed to practice medicine in Pennsylvania, and Board-Certified in Internal Medicine. I am currently the Director of the Center for Perioperative Medicine for the Allegheny Health Network and an Associate Professor of Medicine at Temple University School of Medicine.

I have experience evaluating patients' need for anticoagulation, including reviewing at-home nursing reports.

In the previous twelve months, less than 25% of my professional activities relate to testimony in personal injury cases.

At your request, I have reviewed the following records for Marcius McFadden:

- MedStar Washington Hospital Center, 4/25/2019 – 5/10/2019
- MedStar National Rehabilitation Hospital, 5/10/2019 – 5/18/2019
- MedStar Health Visiting Nurse Reports, 5/20/2019 – 6/18/2019
- MedStar Orthopedics at Washington Hospital Center, 5/31/2019
- Death Certificate, 7/1/2019

## Summary

Mr. McFadden, age 43, was involved in a motorcycle accident on 4/25/2019, and transported by ambulance to MedStar Washington Hospital Center ("MWHC"). He was transferred to MedStar National Rehabilitation Hospital ("MNRH") on 5/10/2019, and discharged on 5/18/2019. He received at home nursing care from 5/20/2019 to 6/18/2019. On July 1, he suffered a medical emergency and died. The Death Certificate lists occlusive pulmonary thromboemboli related to immobility after his motorcycle accident as the cause of death

## Mr. McFadden's Injury and Treatment

Mr. McFadden arrived at MWHC on 4/25/2019. He had suffered left hip dislocation, left open patellar fracture, and second degree friction ("road rash") burns to his left shoulder, upper back, and arm. He underwent open reduction internal fixation of the left hip fracture/dislocation and left knee arthrotomy on 4/26/2019.

Hematology, Monia Pervali, M.D., was consulted on 4/28/2019 for recommendations for prophylactic versus therapeutic anticoagulation. Relevant risk factors for DVT included Mr. McFadden's prior history of DVT, including ten years of Coumadin therapy, African American, history of smoking, elevated BMI, significant orthopedic trauma, and anticipated prolonged edema.

Dr. Pervali recommended against full dose anticoagulation but, given the anticipated immobility, prescribed 4 weeks of Lovenox 30 mg BID.

The patient was discharged to MedStar National Rehabilitation Hospital on 5/10/2019 and evaluated by Dr. Robert Bunning. Dr. Bunning noted Mr. McFadden's history of DVT and prescription for Lovenox.

Dr. Bunning saw the patient again on 5/13, 5/14, 5/16, and 5/18. The patient was discharged home with home care nursing provided through MedStar Visiting Nurses. The home nursing was certified by Laura Tom, M.D. and the reports also appear to be signed by Dr. Tom.

The patient saw Dr. Tom on 5/20/19 and was evaluated by MedStar Orthopedics on 5/31/2019.

The visiting nurses consistently noted Mr. McFadden's continued immobility, lower extremity pain, and edema in the left knee.

Mr. McFadden's Lovenox prescription expired on or about May 29, 2019.

**Opinions**

Mr. McFadden's risk profile for DVT included being African American, BMI over 30, severe orthopedic trauma, orthopedic surgery, sustained immobility, past history of DVT, and history of long-term anticoagulation.

In my opinion, the healthcare providers, specifically Dr. Bunning and Dr. Tom breached the standard of care by failing to reevaluate Mr. McFadden's need for anticoagulation at the expiration of the initial Lovenox prescription.

Given Mr. McFadden's increased risk for DVT, and his continued immobility, pain, and edema, the standard of care required Dr. Bunning, at the time of discharge from National Rehabilitation Hospital, to evaluate the patient's need for long-term anticoagulation. Further, the standard of care required Dr. Tom, a plastic surgeon, in her supervisory role reviewing the at home nursing reports, to obtain a consultation regarding Mr. McFadden's need for long-term anticoagulation.

The standard of care required that Mr. McFadden be placed on long-term anticoagulation. In my opinion, to a reasonable degree of medical probability, these breaches in the standard of care caused Mr. McFadden's DVT and, ultimately, his death.

_____
Marc S. Itskowitz, M.D., FACP