# IN THE UNITIED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARBARA SMART, INDIVIDUALLY * | |
| AND AS PERSONAL REPRESENTATIVE * | |
| OF THE ESTATE OF MARCIUS * | |
| MCFADDEN * | Case Number: 1:22-cv-00705-CKK |
| * | |
| v. * | |
| * | |
| MEDSTAR WASHINGTON HOSPITAL * | |
| CENTER, ET AL. * | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff hereby opposes Defendants' Motion for Partial Summary Judgment.

The Defendants argue that the relative swiftness with which Mr. McFadden lost consciousness before his death should preclude the trier of fact from finding that Mr. McFadden experienced conscious pain and suffering. This argument, however, ignores the evidence suggesting that: 1) the deep vein thrombosis that ultimately traveled to Mr. McFadden's lungs formed in the days or weeks before his death, causing conscious pain and suffering along the way; and 2) loss of consciousness preceding death from a pulmonary embolism comes after a conscious sense of impending death. It is hard to imagine a more objectively severe example of emotional distress and conscious pain and suffering, even if lasted seconds and not minutes or hours, District of Columbia case law makes clear that it is a compensable damage and an issue for the ultimate trier of fact.

Many of the material facts Defendants allege to be undisputed are very much in dispute, and summary judgment is inappropriate. The Defendants' Motion should be denied.

# I. STATEMENT OF MATERIAL FACTS IN DISPUTE

Defendants filed a list of thirty-two purported "material facts" not in dispute, but these myriad pieces of information can be placed broadly into two buckets of facts that form the basis of Defendants' Motion: 1) Direct evidence on whether Mr. McFadden experienced conscious pain and suffering prior to his death; and 2) Expert evidence on whether Mr. McFadden's death from pulmonary embolism was preceded by conscious pain and suffering.

### A. Material Facts in Dispute Concerning Direct Evidence that Mr. McFadden Experienced Conscious Pain and Suffering.

1. Mr. McFadden experienced conscious pain and suffering after the onset of the deep vein thrombosis (DVT) that preceded his pulmonary embolism.[1] His anticoagulation therapy was discontinued by Defendants on May 24, 2019. Plaintiff's expert testified at deposition that Mr. McFadden's DVT formed sometime after cessation of the anticoagulation treatment, but before the occurrence of the PE. Ex. 1, Andemariam Dep. 224; 13-18. Plaintiff's expert added that the edema and pain Mr. McFadden was experiencing at home was concerning for development of DVT. *Id*. at 212; 12-18. The home nursing records after the cessation of anticoagulation therapy are filled with references to persistent pain and swelling in Mr. McFadden's lower extremities. Ex. 2. Tiffany Scott, RN, the home health nurse provider testified that at discharge from home health care, Mr. McFadden was still complaining of significant pain and sweeling in the lower left extremity, consistent with a sign or symptom of a developing blood clot. Ex. 3, Scott Dep. 51; 18 – 54; 23. Plaintiff also testified that, Marcius was in pain all the time, even with the pain medication. Ex. 4, Smart Dep. 240; 12.
2. Whether Naomi Minor was with Mr. McFadden when he began to suffer the effects of the pulmonary embolism is in dispute.[2] While the Prince George's EMS provider James Redman, who recorded Naomi's statement as alleged by Defendants (Defendant Fact No. 10), Naomi subsequently told the Office of the Chief Medical Examiner that she and Mr. McFadden were having sex on the couch (not the bed) and that she went to the bathroom following the encounter and returned to find Mr. McFadden on the couch "with his eyes open." Ex. 5 at 2. Naomi confirmed this version of events to Plaintiff.

---

[1] Defendants' Motion is notably silent on the issue of pain and suffering prior to the onset of the pulmonary embolism, and this material fact therefore does not correspond to any material facts that Defendants allege to be undisputed.

[2] Defendants' Fact Nos. 3, 6, 9, and 10 concern Naomi Minor's statements to EMS personnel, but Defendants' conclusions assume that Naomi was with Mr. McFadden throughout the incident. This assumption is not supported by the other records.

2

Ex. 4, Smart Dep. 261; 11-21. Naomi's statement to EMS, therefore, is not determinative as alleged by Defendants.

**B. Material Facts in Dispute Concerning Expert Evidence that Mr. McFadden suffered conscious pain and suffering.**

3. Whether Plaintiff's expert, Biree Andemariam, M.D., provided testimony tending to show that Mr. McFadden suffered conscious pain and suffering is a fact in dispute. Dr. Andemariam stated in her Rule 26 designation that she would "discuss the conscious pain and suffering and feeling of impending doom Mr. McFadden experienced just before death."[3] Ex. 6, Plaintiff Disclosures at 6. Dr. Andemariam testified that, while the 911 call was received at 4:22 p.m., Mr. McFadden was likely having distress before the call was placed.[4] Ex. 1, Andemariam Dep. 251; 4-12. Dr. Andemariam testified that "when people suffer a pulmonary embolism, a fatal pulmonary embolism, there is a period of time where they feel like they are suffocating. They are aware before they become unconscious.[5] Id. at 255; 8-12. Dr. Andemariam also testified that it is normal for a patient suffering from a pulmonary embolism to not be responsive due to a feeling of suffocation and an inability to communicate. Id. at 251; 8-10.
4. Whether the testimony of Defendants' experts tends to show that Mr. McFadden experienced conscious pain and suffering is also in dispute. Defendants' expert hematologist, Henry Rinder, M.D., testified that only 25% of patients who suffer pulmonary embolism experience sudden cardiac death. Ex. 7, Rinder Dep. 130; 14-16

## II.     LEGAL STANDARD

A party is only entitled to summary judgment if it can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). A party moving for summary judgment must support its assertion that a fact cannot be genuinely disputed by "citing to particular parts of materials in the record, including depositions,

---

[3] Defendants' Fact No. 2 asserts that a single statement in Plaintiffs' interrogatory answers was the "only support" for conscious pain and suffering identified in discovery, but this assertion ignores the ample expert support provided by Dr. Andemariam. Defendants' Fact No. 25 states that Dr. Andemariam's report contained no reference to conscious pain and suffering but omits mention of Dr. Andemariam's Rule 26 designation.

[4] Defendants' Fact No. 27 on includes Dr. Andemariam's reference to the 4:24 p.m. entry on the report, and omits the complete testimony on the timeline.

[5] Defendants' Fact No. 29 states that the only information Dr. Andemariam had regarding the circumstances of Mr. McFadden's death was the PG County EMS Record. Dr. Andemariam is an expert physician who is also relying on her education, training, and expertise concerning pulmonary embolisms.

3

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . or that an adverse party cannot produce admissible evidence to support the fact." Rule 56(c).

If the moving party carries its burden to establish that there is no genuine issue of material fact and it is entitled to judgment as a matter of law, the burden shifts to the non-moving party to show the existence of an issue of material fact. *Bruno v. Western Union Fin. Services, Inc.*, 973 A.2d 713, 716 (D.C. 2009). "A genuine issue of material fact exists if the record contains some significant probative evidence . . . so that a reasonable fact-finder would return a verdict for the non-moving party." *Brown v. 1301 K Street Limited Partnership*, 31 A.3d 902, 908 (D.C. 2011).

The Court may grant summary judgment only if no reasonable juror could find for the non-moving party as a matter of law. *Biratu v. BT Vermont Ave., LLC*, 962 A.2d 261, 263 (D.C. 2008). The Court cannot "resolve issues of fact or weigh evidence at the summary judgment stage." *Barrett v. Covington & Burling, LLP*, 979 A.2d 1239, 1244 (D.C. 2009). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" deciding a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Any doubt as to whether or not a genuine issue of material fact has been raised is sufficient to preclude a grant of summary judgment." *McCoy v. Quadrangle Dev. Corp.*, 470 A.2d 1256, 1259 (D.C.1983). "Accordingly, if an impartial trier of fact, crediting the non-moving party's evidence, and viewing the record in the light most favorable to the non-moving party, may reasonably find in favor of that party, then the motion for summary judgment must be denied." *Weakley v. Burnham Corp.*, 871 A.2d 1167, 1173 (D.C. 2005).

**III.     LEGAL ARGUMENT**

Defendants have not made a prima facie case for summary judgment. Even if the facts cited by Defendants were not in dispute (they are), Defendants would not be entitled to judgment as a matter of law.

First, Defendants incorrectly narrowed the scope of conscious pain and suffering to the minutes before his death. In fact, Mr. McFadden suffered conscious pain and suffering before the onset of the pulmonary embolism that took his life. Second, District of Columbia law is clear that circumstantial evidence of the circumstances of death may be all that is required to place conscious pain and suffering damages in the hands of the jury. *See Doe v. Binker* 492 A. 2d 857 (D.C. 1985). Circumstantial evidence of the severity of the injury and inferences drawn therefrom is a sufficient basis for a jury to award non-economic damages for pain and suffering. *See Asal v. Mina*, 247 A.3d 260.

### A. Mr. McFadden experienced conscious pain and suffering after the formation of his DVT, but before the onset of pulmonary embolism.

Plaintiff has produced overwhelming evidence to establish that Mr. McFadden was suffering after the formation of his DVT and before his pulmonary embolism. The home health records clearly document pain and edema including specific reports of lower left extremity swelling and pain on the final home health visit on June 18, 2019. *See* Ex. 3. Dr. Andemariam testified that:

> …I can tell you that the pain that he was experiencing, the consistent reports of pain with nearly every visit by every home health providers during that approximate one month or so that he was being seen at home is very concerning for a symptom of a DVT. He had continued swelling in that extremity. He was icing it. He was being told by the nursing, visiting nurse to elevate the extremity to deal with some of the edema. I think that there were signs of development of DVT at that time. Ex. 1, Andemariam Dep. 230; 8-19.

5

While Defendant's Motion is entirely silent on any possibility of pain and suffering associated with the DVT there is ample evidence in the record for the jury to consider and conclude that Mr. McFadden was suffering before the onset of the deadly pulmonary embolism.

> **B. There is direct and circumstantial evidence that Mr. McFadden experienced conscious pain and suffering after the onset of the pulmonary embolism, but before he lost consciousness.**

The Defendants' entire Motion is based on the improper and unfounded conclusion that the onset of the pulmonary embolism was at the **exact** time the eyewitness spoke with the 911 dispatcher. But based on reasonable inference from the record as a whole, and the testimony from both Plaintiff and Defendant expert witnesses, there is more than adequate evidence from which a reasonable juror could conclude that Mr. McFadden experienced profound conscious pain and suffering, including the sensation suffocating, before he lost consciousness. Faced with similar facts, in *Burton v. United States*, the Court permitted a pain and suffering award based on Capt. Burton's conscious pain and suffering during his symptomatic episodes and final moments of his life as he suffered a massive pulmonary embolism. *See Burton v. United States*, 668 F. Supp. 2d 86. The lack of evidence suggesting that Mr. McFadden orally expressed the grievous suffering he likely experienced in his final moments does not entitle Defendants to summary judgment.

*__The direct eyewitness testimony gives rise to the inference that decedent was alone when the pulmonary embolism and conscious pain and suffering began.__* Defendant's Motion concludes that the "Decedent was having sexual intercourse and abruptly became unconscious and unresponsive." Def. Memorandum. at 13. This statement is based on "incident comments" contained within the 911 report. But the comments included in the report are not the statements of the eyewitness girlfriend, they are the typewritten comments of the dispatcher based on

conversations with the eyewitness. This report was also **after** the eyewitness became aware that the decedent was struggling and decided to contact 911. The record suggests that decedent's initial struggle even before the call, could have been "a few minutes". Ex. 1, Andemariam Dep. 251; 4-20.

The conclusions relied on in Defendant's Motion is entirely inconsistent with the Office of the Medical Examiner' Report (OME Report) which was developed after multiple conversations with the eyewitness including a statement from detectives:

> "the girlfriend says that she and the decedent were having sexual relations on the couch, not the bed. Afterwards, the decedent flushed the condom in the toilet (which it why it was not found on the scene) and then returned to the couch. The girlfriend then left the room and a few minutes later, she returned and found the decedent still sitting on the couch, with his eyes open, and he was unresponsive." Ex. 5

***The expert testimony in this case supports the inference that Plaintiff experienced conscious pain and suffering.*** Plaintiff's experts Dr. Alexander Duncan and Dr. Biree Andemariam are well-qualified hematologists familiar with the circumstances and physiology of a pulmonary embolism. Both Dr. Duncan and Dr. Andemariam have testified that patients who suffer from a pulmonary embolism commonly have a feeling of suffocation and impending doom before their death. Ex. 1, Andemariam Dep. 68; 3-10; Ex. 8, Duncan Dep. 272; 9 – 273; 5. The physiological mechanism of a pulmonary embolism is such that oxygenated blood above the clot would continue to support tissues and brain function until that blood is exhausted and the clot prevents further flow. Ex. 1, Andemariam Dep. 242; 19 – 243; 2; Ex. 8, Duncan Dep. 299; 16 - 300; 10. Dr. Andemariam specifically testified that patients do not experience a sudden loss of consciousness as a result of a pulmonary embolism and that they experience a sensation of suffocation, and they are consciously suffocating. Ex. 1, Andemariam Dep. 241; 16-19. Dr.

7

Andemariam added that when suffering from a pulmonary embolism, it can be difficult or impossible to speak, which aligns with the incident comment in the EMS report that Mr. McFadden was unresponsive. *Id*. at 256; 8-10. Dr. Alexander Duncan testified that most people who have a crushing embolism grab their chest and endure incredible pain, and he would expect Mr. McFadden to have had significant pain before his death. Ex. 8, Duncan Dep. 299; 6-15. Cherry-picking individual statements from the expert depositions may be a strategy for cross-examination, but it is not a valid basis for summary judgment.

***Defendant's own experts offered to testify on conscious pain and suffering, raised whether Mr. McFadden suffered an instant pulmonary embolism consistent with a rapid and complete loss of consciousness.*** When asked whether Mr. McFadden died instantly or quickly Dr. Lin testified "I don't know … it was probably within five or 10 minutes, but I don't know exactly how many seconds, I wasn't there and I don't think anybody would know, but I don't know for sure. Ex. 9, Lin Dep. 122; 20 – 123; 1. Dr. Rinder, Defendant's expert in internal medicine and hematology, testified that 25% of patients who suffer from a pulmonary embolism experience sudden death, but was unable to opine as to how many within that subset would have zero conscious pain and suffering. Ex. 7, Rinder Dep. 130; 14-16. This testimony supports the Plaintiff's position that the vast majority (the other 75%) of patients who suffer from a pulmonary embolism would not experience sudden death, but suffer and sustain a feeling of suffocation as they take their final breaths. Despite being unable to offer testimony that all 25% of patients who suffer sudden death have zero pain and suffering, Dr. Rinder provides no basis for the opinion that Mr. McFadden falls within that minority category. The entire foundation for Dr. Rinder's conclusion that Mr. McFadden suffered complete and rapid loss of consciousness is based on the fact that that this pulmonary embolism occurred during intercourse. Ex. 7, Rinder Dep. 123; 5-19.

8

However, based on the OME Report and Ms. Smart's testimony, it's clear from the record that this observation did not occur until after intercourse and the eyewitness girlfriend had actually returned back to Mr. McFadden's living area after stepping into the bathroom.  Ex. 5

## IV. CONCLUSION

Defendant's Motion for Partial Summary Judgment should be denied.  Plaintiff has established that jury question exists as to whether Mr. McFadden experienced conscious pain and suffering. Plaintiff has shown that there is circumstantial evidence, expert testimony, and reasonable inferences therefrom, that establish conscious pain and suffering is more common than not in situations involving a pulmonary embolism.  There are clear disputes of material fact and the question of duration and extent of the decedent's pain and suffering should be a question for the jury.

Respectfully Submitted,

**KEILTY BONADIO, LLC**

/s/ Thomas W. Keilty, III
Thomas W. Keilty, III (Bar No. 18992)
tkeilty@kblitigation.com
Nicholas C. Bonadio (Bar No. 13679)
nbonadio@kblitigation.com
One South Street, Suite 2125
Baltimore, MD 21202

**PAULSON & NACE, PLLC**

Christopher T. Nace, Esq.
ctnace@paulsonandnace.com
1025 Thomas Jefferson Street, Suite 810
Washington, D.C. 20007

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 14th day of August, 2023, a copy of the foregoing was served via the Court's Electronic Filing System to:

Crystal S. Deese, Esq. (D.C. Bar #454759)
Benjamin S. Harvey, Esq. (D.C. Bar #999409)
2300 N Street NW, Suite 300
Washington, DC 20037
(T) (202) 457-1600
cdeese@jackscamp.com
bharvey@jackscamp.com
Counsel for Defendants

                                                                  /s/ Thomas W. Keilty, III
                                                                  Thomas W. Keilty, III (18992)